## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| THE TRUSTEES OF THE NATIONAL ) <br> AUTOMATIC SPRINKLER INDUSTRY ) <br> PENSION FUND ) <br> 8000 Corporate Drive ) <br> Landover, Maryland 20785 ) <br> Prince George's County, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> AFP SPECIALTIES, INC., ) <br> 6186 S. Railway Commons, ) <br> Williamsburg, MI 49690, ) <br> ) <br> Serve:   Gordon Day, President ) <br>             6186 S. Railway Commons, ) <br>             Williamsburg, MI 49690, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. _____ |

**COMPLAINT**
(TO COLLECT WITHDRAWAL LIABILITY)

### PARTIES

1. Plaintiffs, Trustees of the National Automatic Sprinkler Industry Pension Fund (hereinafter the "Fund"), are the trustees of a multiemployer employee pension benefit plan as those terms are defined in 29 U.S.C. § 1002(2), (3), and (37).

2. The Fund is established and maintained pursuant to a Restated Agreement and Declaration of Trust (hereinafter, the "Trust Agreement") and Collective Bargaining Agreements between affiliated local unions of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL-CIO (hereinafter, the "United Association") and employers such as AFP Specialties, Inc.

3. The Fund is administered at 8000 Corporate Drive, Landover, Maryland.

4. Defendant AFP Specialties, Inc. (hereinafter, the "Company" or "Defendant") is a corporation existing under the laws of the State of Michigan with its principal office located in Traverse City, Michigan.

5. The Company transacts or transacted business in the State of Michigan as a contractor or subcontractor in the sprinkler fitting industry.

6. At all relevant times herein the Company is, or was, an "employer in an industry affecting commerce," as those terms are defined in 29 U.S.C. §§ 142(1), (3), and 152(2); 29 U.S.C. §§ 1001a, 1002(5), (9), (11), and (12).

## JURISDICTION

7. This Court has jurisdiction over this action pursuant to 29 U.S.C. §§ 1132, 1145 and 1451 because this is an action to collect withdrawal liability payments due to an employee benefit plan both under the terms of the governing plan documents and pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

8. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States.

## VENUE

9. Venue is proper in this district pursuant to 29 U.S.C. §§ 1132(e)(2) and 1451(d) because the Fund is administered in this district.

## FACTS

10. Beginning in or before 2007, the Company was obligated to contribute to the Fund on behalf of its employees pursuant to successive Collective Bargaining Agreements between Local Union No. 669 of the United Association (hereinafter, "Local 669") and the National Fire Sprinkler Association, Inc., and any amendments and interpretations thereof (collectively, the "Collective Bargaining Agreement").

11. The Collective Bargaining Agreement established the terms and conditions of employment for the Company's employees who are or were engaged in the installation, service, repair, and maintenance of fire sprinkler systems.

12. Pursuant to the Collective Bargaining Agreement, the Company agreed to pay to the Fund certain sums of money for each hour worked by its employees covered by the terms of same.

13. The Company agreed, pursuant to the Collective Bargaining Agreement, to be bound by the Fund's Trust Agreement and by the Rules and Regulations of the National Automatic Sprinkler Industry Pension Plan (hereinafter, the "Plan").

14. The Company's last Collective Bargaining Agreement with Local 669 terminated on or about January 22, 2017.

15. On or about January 22, 2017, Local 669 ceased being the bargaining representative of the Company's employees.

16. The cessation of Local 669's representational status terminated the Company's obligations under the Collective Bargaining Agreement.

17. After the Collective Bargaining Agreement terminated, the Fund became aware that the Company was performing work in the jurisdiction of Local 669 of the type for which it previously had an obligation to contribute to the Fund.

18. The Company's work occurred within five years from the date the Company's obligation to contribute to the Fund ceased.

19. The Company has not signed a new Collective Bargaining Agreement with Local 669 or otherwise renewed its obligation to contribute to the Fund.

20. The Company's work without having renewed its obligation to contribute to the Fund caused the Company to experience a complete withdrawal from the Fund, within the meaning of 29 U.S.C. § 1383(b)(2).

21. On June 26, 2018 and pursuant to 29 U.S.C. § 1399(b)(1), the Fund sent a letter to the Company's President, Gordon Day, notifying him of the Fund's determination that the Company experienced a complete withdrawal and, as a result, that the Company was subject to withdrawal liability in the lump sum amount of $610,922.00, which the Fund demanded immediate payment of same (hereinafter, the "Notice").

22. The Fund's Notice included an amortization schedule comprised of forty-one (41) quarterly payments of $20,195.19 each and one final payment of $10,410.78.

23. The Notice also advised Defendant that the first payment under the schedule was due September 1, 2018 and, thereafter, quarterly payments were due on the first day of the third month of each calendar quarter.

24. On July 16, 2018, the Notice was returned to the Fund with a label reading:

"Return to Sender
Unable to Forward
Refused."

25. On July 18, 2018, the Fund re-mailed the June 26, 2018 Notice both to Mr. Day in his capacity as the Company's President and to the Company's Registered Agent.

26. The Notice was received on July 23, 2018 by Defendant as shown by a return receipt signed by the Registered Agent's office.

27. By letter dated August 17, 2018, Defendant, by and through counsel, requested review of the Fund's withdrawal liability assessment pursuant to 29 U.S.C. § 1399(b)(2)(A).

28. The Fund did not receive Defendant's September 1, 2018 payment.

29. On December 14, 2018, the Fund, by and through counsel and pursuant to 29 U.S.C. § 1399(b)(2)(B), responded to the Defendant's request for review (hereinafter, "Response and Dunning Letter").

30. The Response and Dunning Letter informed the Company that the August 17, 2018 request for review did not identify any grounds that justified modifying or rescinding the original assessment and Notice.

31. The Response and Dunning Letter included a delinquency notice advising the Company that it had sixty (60) days to cure its failure to make any payments towards its then past-due withdrawal liability installments due September 1, 2018 and December 1, 2018.

32. The Response and Dunning Letter advised the Company that its failure to cure its delinquency timely would result in the Fund declaring the Company in default of its assessed withdrawal liability.

33. The Response and Dunning Letter was received by the Company, by and through counsel, as evidenced by both delivery receipts and read receipts received from counsel's email server.

## COUNT I

### (To Collect Unpaid Withdrawal Liability)

34. Plaintiffs hereby restate and incorporate by reference the foregoing Paragraphs 1 through 32 as if fully set forth in this Count I.

35. The Company has not made any payments towards its liability owed to Plaintiffs.

36. Pursuant to 29 U.S.C. § 1399(c)(2), the Company's withdrawal liability "shall be payable in accordance with the schedule set forth by the [Fund]."

37. Payment is required notwithstanding any request for review or arbitration of the assessment. 29 U.S.C. §§ 1399(c)(2), 1401(d).

38. More than 60 days have passed since the Company received the Fund's Response and Dunning Letter, which failure was not cured, thereby rendering the Company in default as defined in 29 U.S.C. § 1399(c)(5).

39. In addition, more than 61 days have passed since the deadline for Defendant to demand arbitration under 29 U.S.C. § 1401(a)(1). Accordingly, Defendant is also in default as defined by 29 C.F.R. § 4219.31(c)(1)(ii).

40. Pursuant to 29 U.S.C. § 1399(c)(5) and 29 C.F.R. § 4219.31, the Company's default authorizes the Fund to require immediate payment of the Company's entire outstanding liability.

41. As provided by 29 U.S.C. § 1451(b), the failure of an employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquency under 29 U.S.C. § 1145.

42. In turn, 29 U.S.C. § 1132 provides for civil enforcement of ERISA's provisions, including 29 U.S.C. § 1145.

43. Specifically, 29 U.S.C. § 1132(g)(2) provides that in any action to enforce 29 U.S.C. § 1145 in which judgment in favor of the Fund is awarded, the court shall award the Fund the unpaid assessed withdrawal liability, interest on same, an amount equal to the greater of the interest on the unpaid liability or liquidated damages as provided for under the terms of the Plan provided such amount does not exceed twenty (20) percent of the unpaid liability, reasonable attorneys' fees and costs of the action, and such other legal and equitable relief as the Court deems appropriate.

44. In addition, 29 U.S.C. § 1132(g)(2) provides that interest on unpaid contributions shall be determined using the rate provided in the Plan, or, if none, the rate prescribed under 26 U.S.C. § 6621.

45. Section 10.05(d)(2) of the Plan provides that unpaid withdrawal liability payments shall be charged interest

> from the date the payment was due to the date it is paid at an annual rate equal to the prime rate charged by [JP Morgan Chase & Co.] on the first day of the calendar quarter preceding the due date of the payment.  For each succeeding twelve (12) month period that any amount in default remains unpaid, interest shall be charged on the unpaid balance (including accrued interest) at the prime rate in effect on the anniversary date of the date as of which the initial interest rate was determined.

Plan § 10.05(d)(2).

46. The first day of the calendar quarter preceding September 1, 2018 (first payment due date under the payment schedule) was June 1, 2018.

47. The prime rate charged by JP Morgan Chase & Co. on September 1, 2018, as shown on http://www.jpmorganchase.com/corporate/About-JPMC/historical-prime-rate, was 4.75%.

48. Section 10.05(e) of the Plan provides that,

> [i]n any suit by the Trustees to collect withdrawal liability, … if judgment is awarded in favor of the Plan, the Employer will pay to the Plan, in addition to the unpaid liability and interest thereon as determined under [Paragraph 45 above], liquidated damages equal to the greater of: (1) the amount of interest charged on the unpaid balance, or (2) 20 percent of the unpaid amount awarded.

Plan § 10.05(e).

49. Defendant has failed to make any payments towards its liability due and owing to the Fund pursuant to the established schedule in the Notice and failed to cure its delinquency within sixty (60) days after receiving the Fund's Response and Dunning Letter.

50. Defendant's failure to both pay installments timely and to cure its delinquency renders Defendant in default of its entire withdrawal liability assessment in the principal sum of $610,922.00.

51. Pursuant to 29 U.S.C. § 1132(g)(2) and Section 10.05(d)(2) of the Plan, Defendant is obligated to the Fund for interest on the principal withdrawal liability assessment of $610,922.00

7

accruing from September 1, 2018 – the date the Company's first installment was due, but not paid – to the date of judgment at the initial interest rate of 4.75% per annum.

52. Pursuant to 29 U.S.C. § 1132(g)(2) and Section 10.05(e) of the Plan, Defendant is also obligated to the Fund in the amount of $122,184.40, which represents liquidated damages at the rate of twenty (20) percent of Defendant's principal liability of $610,922.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray relief on Count I against Defendant as follows:

A. Judgment in the principal amount of $610,922.00, representing the entire assessed withdrawal liability due from Defendant by reason of its default;

B. Interest on the principal as set forth in Paragraph A, to be assessed at an initial rate of 4.75% per annum pursuant to 29 U.S.C. § 1132(g)(2)(B) and the terms of the Plan, accruing from September 1, 2018 until the entry of judgment;

C. Liquidated damages in the amount of $122,184.40, which is 20% of the principal set forth in Paragraph A, as mandated by 29 U.S.C. § 1132(g)(2)(C)(ii) and Section 10.05(e) of the Plan;

D. Post-judgment interest pursuant to 28 U.S.C. § 1961;

E. Costs and reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g); and

F. For such further legal and equitable relief as the Court may deem appropriate.

Respectfully submitted,

Date: April 30, 2019

By:     /s/
Charles W. Gilligan (MD Fed. Bar No. 05682)
**O'DONOGHUE & O'DONOGHUE LLP**
5301 Wisconsin Avenue, N.W., Suite 800
Washington, D.C. 20015
(202) 362-0041 - telephone
(202) 362-2640 - facsimile
cgilligan@odonoghuelaw.com

    /s/
Jennifer R. Simon (MD Fed. Bar No. 27863)
**O'DONOGHUE & O'DONOGHUE LLP**
5301 Wisconsin Avenue, N.W., Suite 800
Washington, D.C. 20015
(202) 362-0041 - telephone
(202) 362-2640 - facsimile
jsimon@odonoghuelaw.com

    /s/
Jacob N. Szewczyk (MD Fed. Bar No. 19916)
**O'DONOGHUE & O'DONOGHUE LLP**
5301 Wisconsin Avenue, N.W., Suite 800
Washington, D.C. 20015
(202) 362-0041 - telephone
(202) 362-2640 - facsimile
jszewczyk@odonoghuelaw.com

*(*Signed by Jacob N. Szewczyk with permission of Charles W. Gilligan and Jennifer R. Simon*)*

*Counsel for Plaintiffs*

*Trustees of the National Automatic Sprinkler Industry Pension Fund*

325313_1